## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

In Re

SHEILA JEAN PENTALLA,                                    Case No. 03-15291

     Debtor.

HARRY PENTALLA,

     Plaintiff,

vs.                                                     ADV. No.03-01296

SHEILA JEAN PENTALLA,

     Defendant.

## ORDER

This matter came on for hearing on the Plaintiff's complaint to determine dischargeability

of certain obligations arising out of the divorce of the Debtor, Sheila Jean Pentalla, from the

Plaintiff, Harry Pentalla, under 11 U.S.C. §523(a) 5 and (a) 15.  The Court has jurisdiction to

hear this matter pursuant to 28 U.S.C. § § 157 and 1334 and the Order of Reference of the

District Court.  This matter is a core proceeding pursuant 28 U.S.C. § 157 (b) (2).  After due

consideration of the pleadings, testimony, evidence and arguments of counsel, the Court makes

the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Sheila Pentalla (hereinafter sometimes referred to as Debtor or Mrs. Pentalla) filed her

Chapter 7 petition on September 15, 2003.  Harry Pentalla, former spouse of the Debtor, filed a

complaint on December 15, 2003, to determine dischargeability of certain obligations arising out

1

of a divorce proceeding. The Debtor married Harry Pentalla in 1990. The couple entered into an agreed divorce decree in December, 2001 in Baldwin County, Alabama. Mr. Pentalla is 68 years old with a high school education along with some college. He retired as an assistant Postmaster General with the United States Postal Service in the late 1980s. In 1988, he pled guilty to making false statements and representations in regard to a matter dealing with the United States Postal Service. He served six months, was placed on probation, and has had no other felony convictions. After their marriage, Mr. Pentalla got involved in his wife's real estate business but could not obtain a license because of his prior felony conviction. Sheila Pentalla obtained her real estate license in 1993 and became a licensed real estate broker in 1995. She bought a Century 21 franchise, and formed a business called Pentco, Inc. d/b/a Century 21 Pentalla Properties in Orange Beach, Alabama. She was the owner of the business and Harry Pentalla assisted in the operation and management of the business.

Mr. Pentalla testified that the divorce came as a surprise to him. Both Mr. Pentalla and the Debtor were each represented by independent counsel in the divorce proceedings. Mr. and Mrs. Pentalla entered into a settlement agreement, which was drafted by the Debtor's counsel. Mr. and Mrs. Pentalla negotiated the terms of the settlement, including those dealing with alimony and division of property. Essentially, the Debtor received all the real property that the parties owned at the time of their divorce. This included the marital home at 26165 Canal Road, Orange Beach, Alabama; real estate located on Night Hawk Lane, Pensacola, Florida and the business office property located at 26651-A Perdido Beach Boulevard, Orange Beach, Alabama. Mr. Pentalla retained a 25 percent residual interest in the Canal Road property if the property was sold within seven (7) years of the divorce. The automobiles were divided between the parties

2

and Mrs. Pentalla retained all the personal furnishings and belongings of the parties with the exception of certain items specified in the agreement for Mr. Pentalla. Mrs. Pentalla was also vested with complete ownership of Pentco, Inc.

Mrs. Pentalla agreed to pay to Harry Pentalla periodic alimony in the amount of $1,000.00 per month which was to continue until the death, remarriage or passage of seven (7) years, whichever came first. She testified at trial that she knew the $1,000 per month payment was alimony. Pursuant to paragraph fourteen (14) of the agreement, Mrs. Pentalla agreed to be responsible for and to pay for all debts in her name, all debts in Mr. Pentalla's name and all debts in their joint names incurred prior to June 8, 2001, and agreed to indemnify Mr. Pentalla regarding payment of the same. Further, paragraph seventeen (17) of the agreement provided that "[a]ll debts that are assigned for payment to this Agreement shall be considered in the nature of spousal support; they may not be discharged in bankruptcy, and payment of which may be compelled by the contempt powers of the court."

Prior to the filing of the bankruptcy, Mr. Pentalla had received approximately $19,000.00 in alimony payments. In order to receive the alimony, Mr. Pentalla had to enforce the terms of the divorce settlement by taking Mrs. Pentalla to court. She was held in contempt for failing to pay alimony and was incarcerated until she paid the $19,000.00 in back alimony. Mr. Pentalla stated that the alimony payments were for his support until he could get reestablished. His only other source of income at that time was his $1,900.00 pension from the Postal Service. His first ex-wife was receiving approximately $1,500.00 a month in alimony payments from him.

Part of the obligations that Mrs. Pentalla had agreed to assume were credit card obligations to MNBA of approximately $60,000.00, Chase Bank amounting to approximately

3

$20,000.00, and the Atlanta Postal Credit Union for about $4,000.00 . As evidenced by the testimony, Mr. and Mrs. Pentalla incurred substantial debt during their marriage from gambling at the Biloxi casinos. Mr. Pentalla's income now consists of his retirement and Social Security totaling approximately $2,300.00 a month. He was formerly employed selling antique classic cars, boats and motorcycles on a commission basis. However that job was terminated because the employer was closing the business.

Around the time of the separation Mr. Pentalla withdrew approximately $11,500.00 from the parties' joint bank accounts. He testified that money was needed to find a place to live since she got the home and that he also needed the funds for defraying other living expenses and attorney fees.

Both the Debtor and Mr. Pentalla testified that much of the debt in the bankruptcy was the result of gambling. Mrs. Pentalla says that prior to the divorce, she had been threatened by Mr. Pentalla, and at the time that the divorce settlement agreement was executed, she was under duress and influenced by prescription medication that she was taking. When the divorce was filed, the state court issued a protective order. There was never any evidence that Mrs. Pentalla filed any criminal charges against Mr. Pentalla.

The evidence indicates that after the filing of the divorce, Mrs. Pentalla contacted Mr. Pentalla and that they communicated with respect to negotiations regarding the divorce settlement. Both Mr. Pentalla and the Debtor were represented by independent counsel. Mrs. Pentalla, using notes given to her by Mr. Pentalla, handwrote the agreement that had been negotiated between them. Mrs. Pentalla's attorney then drafted the divorce settlement agreement which was reviewed by Mr. Pentalla and his attorney. Under the terms of the agreement, Mrs.

4

Pentalla agreed to the alimony, agreed that she would be responsible for all debts of the marriage, agreed to indemnify and hold Mr. Pentalla harmless and agreed that debt was in the nature of support. The parties discussed alimony and property division, all of which were negotiated by the parties. Mrs. Pentalla executed the divorce settlement agreement in her attorney's office, she hand delivered the paperwork to the attorney for Mr. Pentalla, and Mr. Pentalla executed the agreement in his attorney's office. Mrs. Pentalla has alleged that she was under duress to execute the agreement and that she made her attorney aware of the fact that she was on Zoloft, a prescription medication. She indicated at trial that she would not have otherwise executed the agreement. Mr. Pentalla testified that he never questioned her mental ability at the time of the execution of the agreement. All during this period of time, Mrs. Pentalla continued to conduct her real estate business and supervise thirteen employees. During this same period of time, she was negotiating and executing contracts with regard to the sale of real property without any apparent disability. At trial, the Debtor admitted that the $1,000.00 was alimony and for the support of Mr. Pentalla. When questioned about the credit card debts incurred during the marriage, for which she agreed to be responsible, she testified that she could afford to pay them.

Even though Mrs. Pentalla mentioned at trial that the execution of the agreement was a mistake, she never filed any pleadings in the Domestic Relations Court seeking to modify the agreement, nor did she file any other pleadings with the Domestic Relations Court articulating her fear of Mr. Pentalla. During this same period of time, she never consulted with a psychologist or a psychiatrist regarding her fear of Mr. Pentalla or her emotional and mental condition.

The documents introduced as evidence in the case indicate that the Debtor had the

5

capacity for earning significant amounts of income. Her tax return for 2002 showed an adjusted gross income of $298,581.00. Her 1099 form for 2003 indicated gross compensation of $272,204.00 and for 2004, her 1099 indicated gross compensation of $244,120.00.

## CONCLUSIONS OF LAW

Mr. Pentalla alleges in his complaint that the $1,000 per month payments and the debts assigned to the Debtor under the divorce judgment are in the nature of support, and are therefore not dischargeable under 11 U.S.C. §523(a)(5). Section 523(a)(5) excepts from discharge debts to a spouse for "support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court." To qualify under §523(a)(5), the debt must actually be "in the nature of alimony, maintenance and support." 11 U.S.C. §523(a)(5). In deciding whether the provisions of a divorce decree are in the nature of alimony and support, courts apply federal law rather than state law. *In re Strickland*, 90 F.3d 444, 446 (11th Cir. 1996). However, state law does "provide guidance in determining whether the obligation should be considered 'support' under §523(a)(5)." *Id*.

The Eleventh Circuit Court of Appeals outlined a court's inquiry in determining whether a debt is truly in the nature of support:

> [A] court cannot rely solely on the label used by the parties. As other courts have recognized , "'it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose.'" *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990) (citation omitted). The court must therefore look beyond the label to examine whether the debt actually is in the nature of support or alimony. *Id*. A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony. (citations omitted)
>
> *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001).

6

The party seeking to have the debt held nondischargeable must prove the case by a preponderance of the evidence. *Cummings*, 244 F.3d at 1265. Courts have used a variety of factors to determine whether a debt is in the nature of support, including but not limited to: (1) whether the obligation is subject to contingencies, such as death or remarriage; (2) whether the payment was fashioned to balance disparate incomes of the parties; (3) whether the obligation is payable in installments or a lump sum; (4) whether minor children are involved; and (5) whether there was need for support. *In re Prater*, 231 B.R. 819, 821 (Bankr. M.D. Fla. 1999); *In re Smith*, 207 B.R. 289, 291 (Bankr. M.D. Fla. 1997). This list is not exhaustive, and each factor need not be proven or considered in every case. *Horner v. Horner (In re Horner)*, 222 B.R. 918, 922 (S.D. Ga. 1998). "Although the factors considered by the bankruptcy court are relevant to our inquiry, the touchstone for dischargeability under §523(a)(5) is the intent of the parties." *Cummings*, 244 F.3d at 1266.

Paragraph six of the Pentallas' divorce judgment calls for the Debtor to pay Mr. Pentalla $1,000 per month as periodic alimony until death, remarriage or the passage of seven years, whichever event occurs first. At trial, the Debtor admitted that the payments were alimony and for the support of Mr. Pentalla; therefore, a discussion of the parties' intent is not necessary.

In paragraph 14 of the divorce judgment, the Debtor agreed to be responsible for and to pay for all debts in her name, all debts in Mr. Pentalla's name and all debts in their joint names incurred prior to June 8, 2001, and to indemnify Mr. Pentalla regarding payment of the same. Paragraph seventeen (17) of the agreement provided that all debts assigned under paragraph 14 were in the nature of support and could not be discharged in bankruptcy. Mr. Pentalla maintains that these payments are also in the nature of support. "It is well-established that debts payable to

7

third parties may be viewed as maintenance or support obligations." *In re Fussell*, 303 B.R. 539, 545 (Bankr. S.D. Ga. 2003) (citations omitted). The Debtor received the real estate business and property, which had been the source of the Pentallas' marital income. Without the income from the real estate business, Mr. Pentalla's only source of income was his pension from the Postal Service and Social Security benefits. These payments amount to approximately $2,300 per month in income. By comparison, the Debtor was earning approximately $250,000 per year, according to her tax returns. It is apparent that Mr. Pentalla would not be able to pay the assigned debts given his limited income; the Court finds that the payment of the assigned debt was in the nature of support.

The Debtor maintains that she was under duress from Mr. Pentalla and was taking medication that affected her judgment during the time that the settlement agreement was negotiated. She claims that she would not have agreed to the terms of the agreement had she not been under duress and taking the medication. The state court did issue a protective order against Mr. Pentalla, but no criminal charges were filed. However, the Debtor and Mr. Pentalla personally worked out the terms of the settlement agreement. If the Debtor felt threatened by Mr. Pentalla, she could have allowed the negotiations to be handled by her attorney. Instead, the Debtor made hand-written notes of the negotiations and took them to her attorney to draft the settlement agreement. Mr. Pentalla was represented by separate counsel. The Debtor and Mr. Pentalla executed the final draft of the agreement at their respective attorney's office. The Debtor stated that her attorney knew that she was taking Zoloft. She never sought psychological help for her condition. During the time of the settlement negotiations, the Debtor was working, making real estate deals and running her office. If she was under duress and acting under

8

diminished capacity due to prescription drugs, it did not interfere with her real estate business. This fact along with the fact that the Debtor was represented by separate counsel lead the Court to conclude that the Debtor was competent to enter into the settlement agreement. Therefore, the Court finds the $1,000 per month payment and payment of the debt referred to in paragraph 14 of the divorce decree are in the nature of support for Mr. Pentalla, and are therefore nondischargeable in this bankruptcy proceeding.

Mr. Pentalla also argued that the debts at issue are not dischargeable under 11 U.S.C. §523(a)(15), which provides that a property settlement obligation may be discharged under certain conditions. The debt can be discharged under §523(a)(15)(A) if the debtor does not have the ability to pay the debt, or under §523(a)(15)(B) if the benefit to the debtor outweighs the detrimental consequences to the nondebtor spouse. After the former spouse has proven that a debt exists and that the debt is not in the nature of maintenance and support, the debtor has the burden of proof for the elements of §523(a)(15). *In re Stone*, 199 B.R. 753, 783 (Bankr. N.D. Ala. 1996). If the debtor proves either the inability to pay or more detrimental consequences, the former spouse has the burden of rebutting the debtor's evidence. *Id.*

If the Court erred in finding that the debts under the divorce judgment are in the nature of alimony or support under 11 U.S.C. §523(a)(5), the debts  may still held to be dischargeable under §523(a)(15)(A) or (B). Subsection 523(a)(15)(A) does not apply because the Debtor admitted at trial that she can afford to pay both the $1,000 per month alimony payment and the assigned debts. Therefore, the only issue before the Court is under §523(a)(15)(B) – whether the benefit to the Debtor of discharging the debts outweighs the detriment to Mr. Pentalla in having the debts discharged. As with the §523(a)(5) count, the issue becomes the disparity of income

9

between the Debtor and Mr. Pentalla. The assigned debt from the divorce judgment totals

approximately $84,000. Mr. Pentalla has a monthly income of $2,300, while the Debtor earns

approximately $250,000 per year. More significantly, the Debtor testified at trial that she can

afford to make the $1,000 alimony payments and the payments under the assigned debt. Paying

off an estimated $84,000 in credit card debt would be a severe burden for Mr. Pentalla given his

monthly income. Payment of these debts may be a financial strain for the Debtor, but she is in a

much better financial position to pay this debt. The evidence leads the Court to conclude that the

benefit to the Debtor does not outweigh the detriment to Mr. Pentalla in discharging the debts at

issue. Therefore, the Court finds that the debts are nondischargeable under §523(a)(15). It is

hereby

**ORDERED** that the relief sought in the Plaintiff's complaint to determine

dischargeability pursuant to 11 U.S.C. §523(a)(5) is **GRANTED**; and it is further

**ORDERED** that the $1,000 per month periodic alimony payment to the Plaintiff and the

Defendant's obligation to pay and hold the Plaintiff harmless on all debts in her name, all debts

in the Husband's name, and all debts in their joint names incurred prior to June 8, 2001 under the

parties' final judgment of divorce dated December 14, 2001 are **NONDISCHARGEABLE**; and

it further

**ORDERED** that the relief sought in the Plaintiff's complaint to determine

dischargeability pursuant to 11 U.S.C. §523(a)(15)(B) is **GRANTED**; and it is further

**ORDERED** that the $1,000 per month periodic alimony payment to the Plaintiff and the

Defendant's obligation to pay and hold the Plaintiff harmless on all debts in her name, all debts

in the Husband's name, and all debts in their joint names incurred prior to June 8, 2001 under the

10

parties' final judgment of divorce dated December 14, 2001 are **NONDISCHARGEABLE**.

Dated:    November 9, 2005


WILLIAM S. SHULMAN
CHIEF U.S. BANKRUPTCY JUDGE